IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : : : | No. 04-506-2 |
| KEVIN JENKINS | : | |

**MEMORANDUM AND ORDER**

**Schiller, J.**                                                                                                                                     **November 9, 2007**

      Defendant Kevin Jenkins moves this Court for a judgment of acquittal or, alternatively, for a new trial following convictions for conspiracy to commit armed bank robbery and for using or carrying a firearm during a crime of violence. For the following reasons, the Court denies his motions.

**I.      BACKGROUND**

      On September 23, 2004, Jenkins and his co-conspirators, Eric Humbert and Rasheen Jones, were charged under a multi-count superseding indictment. Jenkins was charged with conspiracy to commit armed bank robbery, conspiracy to commit carjacking, carjacking, and two related firearm counts. Jones pled guilty on February 8, 2005, and the Court severed Jenkins's and Humbert's cases. After a three-day jury trial commencing on May 8, 2006, Jenkins was found guilty of conspiracy to commit armed bank robbery, conspiracy to commit carjacking, and both related firearms charges. (May 10, 2006 Tr. at 63-64.) He was acquitted of the substantive offense of carjacking. (*Id.*)

      On November 9, 2006, upon agreement of the Defendant and the Government, this Court granted Jenkins a new trial on the conspiracy to commit armed bank robbery charge and the related firearm charge because of an error in the jury instructions. *United States v. Jenkins*, Crim. A. No.

04-506-2, 2006 WL 3254528, at **1-2, 6 (E.D. Pa. Nov. 9, 2006). In the same order, the Court denied Jenkins's motions for a judgment of acquittal and for a new trial on the counts related to conspiracy to commit carjacking. *Id.* at **2-6. The Court held a second trial as to the conspiracy to commit armed bank robbery count and the related firearm counts on April 16, 2007. The jury was unable to reach a verdict, and therefore, the Court declared a mistrial. (Apr. 24, 2007 Tr. at 7-9.) On June 7, 2007, the Court began its third trial on these counts.

Viewed in the light most favorable to the government, the evidence presented at trial can be summarized as follows. In the spring of 2003, Humbert approached Jones regarding a plan whereby they and Jenkins would rob a bank in Salem County, New Jersey, which Humbert had successfully robbed in the past. (June 11, 2007 Tr. at 40, 53-54, 205, 209.) According to the plan, the three men would steal a minivan, which they would use in the bank robbery because it facilitates ingress and egress. (*Id.* at 40-41, 191.) Humbert and Jenkins would rob the bank using guns, depart in the minivan, and drive to the "switch spot" where Jones would be waiting with his car and Jenkins's car. (*Id.* at 41, 43-44, 188-193.) After the co-conspirators switched the money and guns from the minivan to Jenkins's car they would drive back to Philadelphia — Jenkins in his car, and Jones and Humbert in Jones's car to act as a "blocker," essentially a decoy to mislead police. (*Id.* at 44-45, 57-58.)

On May 22, 2003, Jenkins, Jones and Humbert traveled to Salem County, New Jersey; Jones and Jenkins each carried a gun. (*Id.* at 45, 51-52.) Humbert identified the target bank, and the men familiarized themselves with the area, but they aborted their plan to rob the bank because of police presence. (*Id.* at 54-56.) On May 27, 2003, the three men returned to Southern Jersey; Jenkins and Humbert were each carrying guns. (*Id.* at 59, 63-65.) Jones rented a Dodge Ram for the journey,

which he traveled in with Humbert, while Jenkins traveled in his own car. (*Id.* at 65.) Upon arriving in Salem County, Jenkins parked his car at a Cracker Barrel restaurant near the bank and joined the other two men in the Dodge Ram, after which the men began searching for a minivan to steal. (*Id.* at 66-70.)

Having seen a minivan parked in the garage of a Salem County home near the target bank, Humbert and Jenkins went into the home with their guns intending to steal the vehicle, while Jones waited in the car. (*Id.* at 70-78.) Humbert and Jenkins ordered the Robinsons, the elderly couple who lived in the home, at gunpoint to turn over the keys to their minivan. (June 12, 2007 Tr. at 8-11.) In the meantime, Jones got scared and drove back to Philadelphia because he was confronted by an observant citizen who noticed his car as out of place. (June 11, 2007 Tr. at 79-82, 215-223.)

Consequently, after Humbert and Jenkins exited the Robinsons' house, Jones had gone back to Philadelphia. Humbert called Jones from a payphone outside a diner near the Robinson's home, yelled at Jones for leaving, and instructed Jones to meet up with him and Jenkins in Philadelphia. (*Id.* at 83; June 12, 2007 Tr. at 44-48.) Humbert and Jenkins subsequently abandoned the minivan in the Cracker Barrel parking lot near the Robinson's home, and returned to Philadelphia in Jenkins's car. (June 11, 2007 Tr. at 84, 250; June 12, 2007 Tr. at 42-43, 64-65.) When the three men met up around 5:00 that evening, Jones returned Jenkins's and Humbert's cell phones which they left in his car during the home invasion, and Jenkins and Humbert told Jones about tying up the Robinsons and stealing their minivan. (June 11, 2007 Tr. at 82-85.)

Law enforcement officers from New Jersey located and arrested all three men in connection with the home invasion and theft of the minivan. (June 12, 2007 Tr. at 38-48, 55.) While in custody, Jenkins confessed to having committed these acts and plead guilty to robbery. (*Id.* at 48-56.)

Investigators from the FBI eventually met with Jones as the case was proceeding in state court. (*Id.* at 57-60, 106-109.) Jones explained that the reason that he and his co-conspirators were in Salem County was to rob a bank. (June 11, 2007 Tr. at 94-95.) In response to that information, the case was adopted by the federal authorities and the men were indicted in federal court. (June 12, 2007 Tr. at 61.)

Prior to the third trial, Jenkins renewed his motion in limine, which he filed at the outset of the second trial. (June 11, 2007 Tr. at 3-4.) In his motion, Jenkins sought to exclude evidence pertaining to the events that transpired on May 27, 2003 at the home of Mr. and Mrs. Robinson, specifically: (1) evidence that his DNA was found in the Robinsons' home; (2) his confessions from the New Jersey proceeding regarding what occurred in the residence; and (3) Mrs. Robinson's testimony. (*See* Def.'s Mem. of Law in Supp. of Mot. in Limine (Document No. 184) at 4.) Jenkins argued that this evidence was inadmissible pursuant to Federal Rules of Evidence 404(b) and 403 because it related to a carjacking, and not a planned bank robbery. (*Id.* at 4, 7-8.) The Court renewed its ruling granting in part and denying in part Jenkins's motion in limine. (June 11, 2007 Tr. at 3-4; *see also* Apr. 11, 2007 Order.) Pursuant to the Court's order, the Government was prohibited from mentioning Jenkins's convictions from the prior trial and from presenting evidence of Humbert's sexual assault of Mrs. Robinson, provided that Jenkins stipulated that Humbert's DNA was found at the Robinson residence. (Apr. 11, 2007 Order.) The Court, however, permitted the Government to introduce evidence of the events that transpired at the Robinson residence, aside from the sexual assault, because such evidence was intrinsic to the conspiracy charge. (*Id.*)

After the third trial, Jenkins was convicted of conspiracy to commit armed bank robbery and using or carrying a firearm during a crime of violence. (June 13, 2007 Tr. at 80-81.) Currently

before the Court are Jenkins's post-trial motions seeking judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 or, alternatively, a new trial pursuant to Federal Rule of Criminal Procedure 33.[1]

## II.     STANDARD OF REVIEW

In considering a claim that the evidence was insufficient to support a conviction pursuant to Federal Rule of Criminal Procedure 29, a district court views the evidence "in the light most favorable to the government and affirm[s] the judgment if there is substantial evidence from which any rational trier of fact could find [the defendant] guilt[y] beyond a reasonable doubt." *United States v. Frorup*, 963 F.2d 41, 42 (3d Cir. 1992); *see also* FED. R. CRIM. P. 29.  If evidence emerges from the trial that supports the jury's verdict, regardless of how probative the court believes it to be, then a defendant's motion for acquittal based on insufficient evidence should be denied.  *See United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1989).  "The 'contention that the evidence also permits a less sinister conclusion is immaterial.  To sustain the jury's verdict, the evidence does not need to be inconsistent with every conclusion save that of guilt.'" *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002) (*quoting United States v. Dent*, 149 F.3d 180, 188 (3d Cir. 1998)).

Pursuant to Federal Rule of Criminal Procedure 33, a court may grant a new trial "if the

---

[1] Jenkins also filed a *pro se* motion to dismiss the indictment, and for a judgment of acquittal or, in the alternative, a new trial.  Because Jenkins is represented by counsel, the Court will not consider his *pro se* filing and will limit this memorandum to discussion of the motions filed by defense counsel.  *See United States v. Vampire Nation*, 451 F.3d 189, 206 n.17 (3d Cir. 2006) (district courts have authority to reject *pro se* motions filed by a represented defendant).  Accordingly, Jenkins's *pro se* motion is denied.  Jenkins should be well aware of the law in this regard since this Court has previously denied the *pro se* motions filed by Jenkins while he was represented by counsel.  (*See* Apr. 18, 2006 Order; Feb. 1, 2007 Order.)

interest of justice so requires." FED. R. CRIM. P. 33(a). Such circumstances exist where the verdict is against the weight of the evidence. *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003). In assessing a defendant's motion for a new trial on the ground that the verdict is contrary to the evidence, a district court exercises its own judgment as to the weight of the evidence. *Id*. A new trial is warranted under this standard only if the court believes that "there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 151 (3d Cir. 2002) (internal citations omitted). Motions for a new trial based on a claim that the verdict is against the weight of the evidence should only be granted in exceptional cases. *Gov't of the Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987).

### III. DISCUSSION

#### A. Jenkins is Not Entitled to a Judgment of Acquittal

Jenkins contends that he is entitled to a judgment of acquittal because there was insufficient evidence to show either that he entered into an agreement to commit armed bank robbery or that any overt act was committed in furtherance of such a conspiracy. (Def.'s Mem. of Law in Supp. of Def.'s Post Trial Mots. [hereinafter Def.'s Mem.] at 3-4.) In this regard, Jenkins contends that while there may have been competent evidence at trial relating to the theft of the minivan and the invasion of the Robinson's home, there was insufficient evidence to establish a conspiracy to commit bank robbery. (*Id.* at 4.) The only evidence to this effect, argues Jenkins, was the testimony of his co-conspirator Rasheen Jones, who stated that the minivan was taken for the purpose of robbing a bank. (*Id.*) Because Jones's testimony was "totally incredible," Jenkins argues that his convictions cannot stand. (*Id.*)

6

To sustain a conviction for conspiracy to commit armed bank robbery, the Government must establish: (1) that an agreement existed between at least two people to commit armed bank robbery; (2) that the Defendant knowingly joined the agreement; and (3) that at least one overt act was committed in furtherance of the conspiracy. *United States v. Davis*, 183 F.3d 231, 243-44 (3d Cir. 1999); *see also* 18 U.S.C. § 371 (2007). The substantive offense of armed bank robbery occurs when a person, by force, violence, intimidation or extortion, knowingly takes or attempts to take property or money belonging to a bank that is insured by the FDIC, and in the process, endangers another's life by using a dangerous weapon. 18 U.S.C. § 2113. To sustain Jenkins's conviction on the related firearm charge, the Government must establish beyond a reasonable doubt that Jenkins used or carried a firearm during and in relation to the underlying violent crime, conspiracy to commit bank robbery. *Id.* § 924(c). The Government may prove its case entirely with circumstantial evidence. *Davis*, 183 F.3d at 243; *United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir. 1986).

Substantial evidence supports the jury's verdict in this case. Jones testified to the conspiracy among himself, Jenkins and Humbert to rob a bank in Salem County, New Jersey, which included stealing a minivan to use in connection with the bank robbery. (June 11, 2007 Tr. at 40-45, 54, 57-59, 205, 209.) He further testified that on May 22, 2003 and on May 27, 2003, he and his co-conspirators traveled to New Jersey with guns for purposes of robbing that bank, and that, on their second trip to New Jersey, they stole the Robinsons' minivan in furtherance of their plan. (*Id.* at 45, 51-52, 54-56, 59-60, 63-65, 70-79.) Jones likewise testified that based on Jenkins's actions and discussions with himself and Humbert, Jenkins understood that the purpose of traveling to Salem County on May 22 and 27 of 2003 was to rob a bank. (*Id.* at 209.)

Jones's testimony was corroborated by considerable circumstantial evidence. Mrs. Robinson

7

testified that on May 27, 2003, two armed men entered her home demanding money and her minivan, and that she offered to give the men the Cadillac, which was also in the garage at the time, but that the men insisted on taking the minivan. (June 12, 2007 Tr. at 8-11.) Other than the minivan and some money, nothing was taken from the home, nor was the house ransacked for valuables. (*Id.* at 22-23, 35; June 11, 2007 Tr. at 252.) Phone records established that the men were in Salem County — approximately a forty minute drive from Philadelphia — on the dates of May 22, 2003 and May 27, 2003 and that Jones received a call on his cell phone shortly after 4:00 p.m. on May 27, 2003 from a pay phone outside a diner two miles from the Robinsons' house. (June 11, 2007 Tr. at 227-237; June 12, 2007 Tr. at 26, 44-48, 113-121.) Additionally, the minivan was abandoned only four miles or so from the Robinsons' home, in the parking lot behind a Hampton Inn and a Cracker Barrel — approximately three and a half miles from the target bank. (June 12, 2007 Tr. at 42-43, 64-65, 250.)

From these facts, a jury could reasonably infer that Jenkins participated in the theft of the minivan, an overt act, as part of a larger plan to rob a bank, and that the bank was not robbed because the men were forced to abort their plot and return to Philadelphia when Jones fled the scene.[2] Since the evidence established that Jenkins used a gun during the home invasion and theft of the minivan, it was also reasonable for the jury to conclude that Jenkins was guilty on the related gun count. Consequently, sufficient evidence supports the jury's conclusion that Jenkins is guilty beyond a reasonable doubt of conspiracy to commit armed bank robbery and the related gun charge. *See United States v. Trice*, Crim. A. No. 95-124-8, 1996 WL 50839, at **2-3 (E.D. Pa. Oct. 9, 1996) (co-

---

[2] Similarly, a reasonable jury could find that the May 22nd trip to the bank was an overt act in furtherance of the conspiracy to commit bank robbery.

conspirators' testimony alone supported conspiracy conviction since "credibility of witnesses is the sole province of the jury . . . and they were free to believe the testimony of [the co-conspirators]"); *see also Kapp*, 781 F.2d at 1011 (sufficient evidence supported conviction for conspiracy to transport stolen vehicles where co-conspirator's testimony established defendant's knowledge that the vehicle in question was stolen). As such, Jenkins's motion for acquittal is denied.

### B. The Verdict is not Against the Weight of the Evidence

Jenkins argues that he is entitled to a new trial because the verdict was against the weight of the evidence. (Def.'s Mem. at 5.) As discussed above, Jenkins's co-conspirator Jones testified at length regarding the plan to drive to New Jersey, steal a minivan and rob a bank. The corroborating evidence further establishes that Jenkins agreed to rob a bank with Jones and Humbert, and that he stole the Robinson's minivan while wielding a gun in connection with the planned bank robbery. Accordingly, the verdict is not against the weight of the evidence and this Court concludes that no miscarriage of justice has occurred. Consequently, Defendant's motion for a new trial is denied in this regard.

### C. The Court Appropriately Denied Jenkins's Motions in Limine

Jenkins further contends that he is entitled to a new trial because the Court erred in denying his motion in limine, thereby: (1) admitting evidence of the invasion of the Robinson's home in violation of Federal Rules of Evidence 403 and 404(b); and (2) admitting evidence of his withdrawn guilty plea and statements made during the course of a plea negotiation from a related state case in New Jersey in violation of Federal Rule of Evidence 410.[3] (*Id.* at 5-16.)

---

[3] Jenkins also argues that the Court's error in allowing Jenkins's withdrawn guilty plea into evidence was compounded because the Government showed a video of the plea in which Jenkins was wearing a prison jumpsuit. (Def.'s Mem. at 7.) At the second trial, the Court

>   *1.*     *The Court Appropriately Admitted Evidence Relating to the Theft of the Minivan and Home Invasion*

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b) does not apply, however, to those acts that are intrinsic to the charged offense. *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002). In other words, if the evidence "directly prove[s] the charged conspiracy" the Rule's prohibition is inapplicable. *Id.* Federal Rule of Evidence 403 allows for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." "[W]hen evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *Cross*, 308 F.3d at 323.

Testimony regarding the events that occurred at the Robinsons' home on May 27, 2003 is circumstantial evidence of an agreement between Jenkins and his co-conspirators to rob a bank and Jenkins's knowledge of that agreement, and direct evidence of overt acts taken in furtherance of that agreement. Therefore, the theft of the minivan is intrinsic to the charged conspiracy because the theft was a piece of the overall plan to rob a bank. Consequently, evidence regarding the manner in which Jenkins and his co-conspirators conducted that theft, including Mrs. Robinson's testimony regarding events as they unfolded and testimony from the investigating officers that the house was not ransacked is exempted from the reach of Rule 404(b). *See United States v. Gibbs*, 190 F.3d 188, 218 (3d Cir. 1999) ("Rule 404(b) does not limit the admission of evidence of the defendant's

---

required the Government to play an audiotape of Jenkins's guilty plea rather than the videotape, so that the jury would not see Jenkins in prison attire. (Apr. 20, 2007 Tr. at 53.) Although the Government inadvertently played part of this video during the third trial when attempting to play the audiotape, the Court ruled that Jenkins was not prejudiced by the image, because it appeared only momentarily and the jury was not focusing on the image. (June 12, 2007 Tr. at 136-137.) The Court reiterates its ruling.

participation in acts of violence as direct proof of a conspiracy."). Under the same logic, DNA evidence found at the home identifying Jenkins and co-conspirator Humbert constitutes additional evidence that Jenkins actively participated in that conspiracy. Furthermore, Mrs. Robinson's testimony that the men were carrying guns at the time is direct proof of guilt on the related gun charge.

Additionally, because the evidence of the home invasion and subsequent theft of the minivan is highly relevant proof of the conspiracy, any prejudicial effect is substantially outweighed by its probative value such that it is not precluded under Rule 403. *United States v. Vega*, 285 F.3d 256, 263-64 (3d Cir. 2002); *see also Cross*, 308 F.3d at 325 ("Rule 403 does not provide a shield for defendants who engage in outrageous acts," nor does it "require the government to sanitize its case, to deflate its witnesses' [sic] testimony, or to tell its story in monotone.") (internal quotations omitted). Since the Court acted properly in admitting evidence of the home invasion, no miscarriage of justice has occurred that would require a new trial.

        2.     *Jenkins is Precluded from Raising a Rule 410 Objection Regarding His Withdrawn Guilty Plea and Confessions*

Federal Rule of Evidence 410 provides that any statements, including guilty pleas that are later withdrawn, made in the course of plea negotiations are inadmissible against a defendant at trial. Jenkins's post-trial objection to the admission of his withdrawn guilty plea and related statements fails because Jenkins did not object on this ground, either at trial or in his motion in limine, and therefore his Rule 410 objection was waived.[4] *See Mack v. Schneider Nat'l Carriers*, Civ. A. No.

---

[4] Since the parties incorporated prior objections and rulings from the previous trials in the third trial, (June 11, 2007 Tr. at 3-4) the Court, in an abundance of caution, has reviewed the transcripts from all three trials. Jenkins never filed a motion in limine seeking to exclude his withdrawn plea and related statements pursuant to Rule 410, in all three trials he employed a

92-5252, 1994 WL 388494, at *4 (E.D. Pa. July 26, 1994) (*citing Magil v. Westinghouse Elec. Corp.*, 464 F.2d 294 (3d Cir. 1972)); *see also United States v. Sandini*, 803 F.3d 123, 126 (3d Cir. 1986)).

Moreover, Jenkins affirmatively used his own plea and related confessions at trial. First, Jenkins employed this evidence to argue that he was in Salem County solely to steal a car and not to rob a bank. In his closing argument, Defense Counsel stated that:

> [T]he majority of the Government's case had nothing to do with the conspiracy to commit armed bank robbery. It had to do with what took place in the Robinsons' home.
> The fact that it was a brutal crime, the fact that Mr. Robinson had Alzheimer's, the fact that they were elderly, the fact that they were tied up, the fact that their attic steps were taken down, the fact that they were looking for jewelry in the house, the fact that these . . . horrible people—and we're not minimizing whatsoever, what took place in the Robinsons' home. My client pled guilty to that in the State of New Jersey and he was willing to face the fifteen to twenty-five year sentence in the State of New Jersey.

(June 13, 2007 Tr. at 27.) Second, Jenkins used his statements to attack the credibility of Jones's testimony by arguing that Jones fabricated the conspiracy after learning that Jenkins pled guilty to the state charges and was going to testify against him in state court. Defense counsel argued in his closing argument that Jones "concoct[ed] a scheme that [he was] going to go and tell the federal government about an armed bank robbery," (*Id.* at 22), complementing defense counsel's opening statement in which he argued:

> As the prosecutor indicated to you, my client as soon as he was arrested made a statement, he made a confession, he admitted that he broke in to the Robinsons' home, he pilfered

---

similar opening statement and closing argument in which he referenced this evidence, and he never made a Rule 410 objection to the Government's reference of this evidence in its opening statement and closing argument or the Government's introduction of this evidence at any of the trials. (May 5, 2006 Tr. at 53-54, 73-74; May 8, 2006 Tr. at 23-28, 76, 81; May 9, 2006 Tr. at 28-32, 88, 99, 107-110; Apr. 16, 2007 Tr. at 11-13; Apr. 17, 2007 Tr. at 256-260, 266-267; Apr. 20, 2007 Tr. at 47-53, 149, 159-160; June 11, 2007 Tr. at 27-29, 35-36, 90; June 12, 2007 Tr. at 48-57; June 13, 2007 Tr. at 12, 27.)

>through their house looking for valuables to take. He stole a car. He will tell you what he did in that house. You will hear the statement that he gave. You will hear the statement that he gave before a judge in a court of law and you will hear that he was facing up to . . . twenty-five years in jail in the State of New Jersey. And you will hear how he also implicated the man who is going to testify against him.

(June 11, 2007 Tr. at 34-35).

Jenkins cannot now raise this evidentiary objection because the jury did not adopt his view of the evidence or because in hindsight, he is dissatisfied with the results of his trial strategy. As such, his motion for a new trial on this ground is denied. *See United States v. Bamberger*, 456 F.2d 1119, 1131 (3d Cir. 1972) (affirming defendant's conviction over argument that evidence was improperly admitted where "counsel's failure to object could be interpreted as deliberate trial strategy . . . ."); *see also United States v. Palma-Ruedas*, 121 F.3d 841, 858 (3d Cir. 1997), *rev'd on other grounds*, *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999); *United States v. Swinton*, Civ. A. No. 94-008-01, 1997 WL 842958, at *6 (E.D. Pa. Mar. 5, 1997), *aff'd*, 151 F.3d 1027 (3d Cir. 1998). Indeed, "[a] party may not sit by silently, take his chances on a verdict, and, if it is adverse, then complain of a matter which, if error, could have been eradicated during the trial if brought to the attention of the court or one's adversary in a proper and timely fashion." *Bamberger*, 456 F.2d at 1131 (3d Cir. 1972).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for a judgment of acquittal or, alternatively, for a new trial are denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | No. 04-506-2 |
| KEVIN JENKINS | : | |

## ORDER

**AND NOW**, this **9th** day of **November**, **2007**, upon consideration of Defendant's post-trial motions, the Government's response thereto, and for the foregoing reasons, it is hereby **ORDERED** that:

1. Defendant's Motion for a New Trial (Document No. 217) is **DENIED**.

2. Defendant's Motion for a Judgment of Acquittal (Document No. 218) is **DENIED**.

3. Defendant's *Pro Se* Motion to Dismiss Counts in Indictment: For a Judgment of Acquittal or In Alternative a New Trial (Document No. 243) is **DENIED.**

BY THE COURT:

**Berle M. Schiller, J.**